1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____ FILED   _____ ENTERED
_____ LODGED   _____ RECEIVED

JUL 23 2004 ZG

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEP"'

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JANE ZEBARI and DANIEL J. ANDERSON
on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

        v.

DRUGSTORE.COM, INC., KAL RAMAN,
ROBERT A. BARTON, and SRIDHAR IYER,

                              Defendants.

No. C04-1642 P

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL
SECURITIES LAWS

**[JURY TRIAL DEMANDED]**

04-CV-01642-CMP

Plaintiffs, Jane Zebari and Daniel J. Anderson ("Plaintiffs"), individually and on behalf

of all other persons similarly situated, base the allegations set forth herein upon the investigation

conducted by Plaintiffs' counsel, which included a review of United States Securities and

Exchange Commission ("SEC") filings, news articles, press releases, and public statements

issued by or pertaining to drugstore.com, Inc. ("drugstore.com" or the "Company").

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1295.10.0001 BSC.DOC

- 1 -



HAGENS BERMAN LLP

CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 ● SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

## I.    NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of all persons who purchased or otherwise acquired drugstore.com common stock between January 14, 2004 and June 10, 2004 inclusive ("Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("Exchange Act"), and the regulations promulgated thereunder by the SEC.

2.    During the Class Period, Defendants issued, or caused to be issued, materially false and misleading statements regarding the Company's business and prospects to artificially inflate the value of drugstore.com stock.  As a result of Defendants' deceptive statements, drugstore.com shares traded at inflated prices during the Class Period, reaching a Period high of $7.91 per share on January 21, 2004.  Once the stock value reached its orchestrated limit, the Company's top officers and directors exercised their options and sold their shares to public investors.  Defendant, and former CEO, Kal Raman sold over 90% of his holdings for proceeds in excess of $3.26 million, and the combined earnings of insider trading during the 5-1/2 month Class Period exceeded $4.78 million.

## II.    JURISDICTION AND VENUE

3.    The claims asserted herein arise under and are pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] including Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

4.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

5.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information to the investing public, occurred in substantial part in this District.  In addition, drugstore.com maintains its principal executive offices in this district.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC DOC

- 2 -



HAGENS BERMAN LLP
law offices

CAMBRIDGE   LOS ANGELES   PHOENIX [PLLC]   SEATTLE
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

6.     Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets in connection with the acts alleged in this complaint.

## III.   THE PARTIES

7.     Plaintiffs Jane Zabari and Daniel J. Anderson, as set forth in the accompanying certifications incorporated by reference herein, purchased drugstore.com common stock during the Class Period and were damaged thereby.

8.     Defendant drugstore.com is an online provider of health, beauty, wellness, personal care, vision, and pharmacy products. The Company's principal offices are located at 13920 S.E. Eastgate Way, Suite 300, Bellevue, WA 98005. drugstore.com describes itself as:

> [A] leading online drugstore and information site offering A Very
> Healthy Way to Shop™ for health, beauty, wellness, personal care,
> and pharmacy products. The drugstore.com online store provides a
> convenient, private, and informative shopping experience that
> encourages consumers to buy products essential to healthy
> everyday living.

9.     Defendant Kal Raman ("Raman") was the President and Chief Executive Officer of drugstore.com until his resignation on June 11, 2004. During the Class Period, Raman sold 90% of his holdings in the Company for proceeds in excess of $3.26 million.

10.    Defendant Robert A. Barton ("Barton") was the Vice President, Finance and Chief Financial Officer of drugstore.com. During the Class Period, Barton sold shares of Company stock for proceeds in excess of $1.2 million.

11.    Defendant Sridhar Iyer ("Iyer") was the Vice President, Technology and Chief Information Officer of drugstore.com. During the Class Period, Iyer sold more than $306,000 worth of his drugstore.com shares.

12.    Defendants Raman, Barton and Iyer are referred to herein as the "Individual Defendants." Because of their high-level positions with the Company, the Individual Defendants

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1705.10 0001 BSC.DOC

- 3 -



HAGENS BERMAN LLP

CAMBRIDGE  LOS ANGELES  PHOENIX [PRO]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  possessed the requisite power and authority to control the contents of drugstore.com's quarterly
2  reports, press releases, and presentations to securities analysts, money and portfolio managers,
3  and institutional investors.  Prior to, or shortly after the Company issued its reports and press
4  releases, the Individual Defendants were provided with copies of said documents for personal
5  review.  At this time, they had the ability and opportunity to correct misleading materials, and to
6  prevent any false statements from being issued.

7      13.     The Individual Defendants, in their capacity as executive officers of
8  drugstore.com, were privy to material non-public information.  Each of these defendants knew
9  that the adverse facts specified herein were concealed from the public, and that the positive
10  statements issued were materially false and misleading.  As such, the Individual Defendants are
11  liable for the false statements, which constitute "group-published" information, pleaded herein.

12               **IV.     CLASS ACTION ALLEGATIONS**

13      14.     Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil
14  Procedure 23(a) and (b)(3) on behalf of a class ("Class"), consisting of all those who purchased
15  the securities of drugstore.com between January 14, 2004 and June 10, 2004, inclusive (the
16  "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the
17  officers and directors of the Company, members of their immediate families and their legal
18  representatives, their heirs, successors, or assigns, and any entity in which Defendants have or
19  had a controlling interest.

20      15.     drugstore.com's common stock and other securities were actively traded on the
21  NASDAQ National Market under the symbol "DSCM" throughout the Class Period.  According
22  to the Company's report filed on Form 10-K with the SEC on May 7, 2002, a representative
23  point during the Class Period, drugstore.com had approximately 78,771,713 million shares of
24  common stock outstanding as of April 30, 2002. As a result, members of the Class are so
25  numerous that joinder of all of them is impracticable.  While the exact number of Class members
26  is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery,



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  Plaintiffs believe there are thousands in the proposed Class and that they are geographically

2  dispersed.

3      16.    Plaintiffs' claims are typical of those of the members of the Class, as all members

4  are similarly adversely affected by Defendants' wrongful conduct in violation of the federal law

5  complained of herein.

6      17.    Plaintiffs will fairly and adequately protect the interests of the members of the

7  Class, and have retained counsel that is competent and experienced in class action and securities

8  litigation. In addition, Plaintiffs have no interests in conflict with the other members of the Class

9  that Plaintiffs seek to represent.

10      18.    A class action is superior to all other available methods for the fair and efficient

11  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

12  the damages suffered by individual Class members may be relatively small, the expense and

13  burden of individual litigation make it impossible for members of the Class to individually

14  redress the wrongs done to them. There will be no difficulty managing this action as a class

15  action.

16      19.    Common questions of law and fact exist as to all members of the Class, and

17  predominate over any questions solely affecting individual members of the Class. Among the

18  questions of law and fact common to the Class are:

19          a.    Whether the federal securities laws were violated by
                  Defendants' acts as alleged herein;
20

21          b.    Whether statements made by Defendants to the investing
                  public during the Class Period misrepresented material
22                facts about the business and operations of drugstore.com;

23          c.    Whether Defendants breached any duty to convey material
                  facts or to correct material facts previously disseminated;
24

25          d.    Whether Defendants willfully, with knowledge, or
                  recklessly participated in and pursued the fraudulent
26                scheme or course of conduct complained of herein;

CLASS ACTION COMPLAINT FOR                    - 5 -
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 HSC.DOC



HAGENS BERMAN LLP
ATTORNEYS AT LAW

CAMBRIDGE  LOS ANGELES  PHOENIX [MLF]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1

2

       e.     Whether the material nondisclosures alleged herein artificially inflated the market price of drugstore.com common stock; and

3

4

       f.     To what extent the members of the Class sustained damages, and what constitutes the proper measure of these damages.

5

## V.    SUBSTANTIVE ALLEGATIONS

6

    20.    On January 14, 2004, drugstore.com issued a press release announcing

7

preliminary financial results for its fourth quarter of fiscal year 2003. The press release stated, in

8

relevant part:

9

10

> Company Anticipates 4Q03 Revenue Increase of 28% over 4Q02 and Indicates Key Profitability Milestone Achieved

11

12

13

> drugstore.com, inc., the leading online retailer of health, beauty, wellness, personal care, and pharmacy products, in connection with its upcoming presentation at the 2nd Annual SG Cowen Consumer Conference in New York, today announced preliminary financial results for the quarter ended December 28, 2003.

14

15

16

17

18

19

20

21

22

> drugstore.com, inc. announced that it expects record revenues reflecting a 28% increase over revenues for the fourth quarter of fiscal year 2002, or approximately $70.0 million in revenues for the fourth quarter of fiscal year 2003. The company also expects to report profitability on an EBITDA basis for the fourth quarter of fiscal year 2003. EBITDA is a non-GAAP financial measure defined as earnings before interest, taxes, depreciation and amortization of intangible assets, non-cash marketing expense and stock-based compensation. A schedule of the expected range of estimated amounts to be used in reconciling expected net loss (the most directly comparable GAAP measure) to expected EBITDA profitability is provided supplementally below. In addition, drugstore.com, inc. expects to end fiscal year 2003 with more than $40 million in cash and cash equivalents. These preliminary results are subject to revision upon completion of an audit of the full year's results by the company's outside auditors.

23

24

25

26

> "In a very tough economy, we have been a high-growth retailer that has consistently outperformed the competition," said Kal Raman, president and chief executive officer of drugstore.com, inc. "As a result of our relentless focus on convenience, selection, value, and most importantly, trust, we are now well-positioned to capitalize on the incredible growth opportunities in the $273 billion health, beauty, wellness, and pharmacy market."



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE   LOS ANGELES   PHOENIX [NLC]   SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

21.     On January 20, 2004, the start of the Class Period, drugstore.com issued a press release announcing "record net sales of $70.6 million for the quarter and a 59% year-over-year reduction in GAAP net loss," as well as its achievement of "EBITDA profitability (a non-GAAP financial measure defined as earnings before interest, taxes, depreciation and amortization of intangible assets, non-cash marketing expense, and stock-based compensation)." Commenting on this news, defendant Raman stated:

> The fourth quarter was an important milestone for drugstore.com™, as we accomplished significant operational goals, including record sales, higher gross margins, and most importantly, EBITDA profitability[.] . . . We also made significant investments for the future, such as broadening our product mix by acquiring a leading online contact lens provider, launching new technology that makes it easier for customers to use their flexible spending accounts, and leading the effort to make the Internet safer for consumers shopping online for prescriptions. With these and other growth initiatives, we believe we can continue to grow the company profitably and build on our position as the leading provider of health, beauty, wellness, personal care, and pharmacy solutions on the Web.

22.     The January 20, 2004 press release also included a very positive outlook for the Company's fiscal year 2004:

> drugstore.com, Inc. anticipates net sales for fiscal year 2004 to grow in excess of 45% over 2003, and be in the range of $360 million to $390 million. Of net sales, the company expects pharmacy mail order sales to be approximately 16%, local pickup pharmacy sales to be approximately 24%, eye care sales to be approximately 20%, and OTC sales to be approximately 40%. For fiscal year 2004, the company expects GAAP net loss in the range of $9.5 million to $13.5 million and EBITDA in the range of break-even to $4 million. For the first quarter of fiscal year 2004, the company expects net sales to be approximately $80 million to $85 million, with mail order pharmacy sales at approximately 17% of net sales, local pickup pharmacy sales at approximately 28%, eye care at approximately 15%, and OTC sales at approximately 40%. Gross margin in the first quarter of 2004 is expected to be in the range of 21% to 22%. The company anticipates a GAAP net loss range of $4.5 million to $5.0 million and an EBITDA loss range of $1.2 million to $1.7 million for the first quarter, as the company anticipates increased marketing spending in the first quarter to drive additional growth into the newly acquired Vision Direct and the company's other base businesses.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC

- 7 -



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE   LOS ANGELES   PHOENIX (LLC)   SEATTLE
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

23.     In response to this positive outlook, drugstore.com's stock rose 13%, or $.94, from $6.97 to close at the class high of $7.91 on a trading volume of 1.8 million shares, five times the Class Period average.

24.     From January 26, 2004 to March 30, 2004, Defendant Barton sold 200,000 shares of his drugstore.com stock for proceeds in excess of $1.2 million.

25.     From January 26, 2004 to April 18, 2004, Defendant Raman sold 551,300 shares of his drugstore.com stock for proceeds in excess of $3.26 million.

26.     From February 6, 2004 to February 12, 2004, Defendant Iyer sold 40,000 shares of his drugstore.com stock for proceeds of $262,000.

27.     On April 28, 2004, drugstore.com announced its first quarter results.  The Company provided a list of 15 highlights for the quarter, each of which painted a very promising picture.

> Net sales grew by 48% to $84.4 million. Sales in the OTC segment grew by 48% to $35.5 million, mail-order pharmacy sales grew by 24% to $14.5 million, local pick-up pharmacy sales were flat at $21.5 million, and sales in the vision segment (created in December 2003 as a result of the acquisition of International Vision Direct Corp.) were $12.9 million.

> Average net sales per order increased by 10%, or $7, to $78. Average net sales per order grew by 20% to $60 for OTC, by 16% to $129 for mail-order pharmacy, and by 10% to $101 for local pick-up pharmacy. Average net sales per order for the vision segment were $77.

> Order volume during the quarter exceeded 1 million orders, and grew by 33%.

> The trailing 12-month number of active customers grew by 21% to 1.57 million. The average annual spend per active customer was $174, up from $160. During the quarter, the Company revised its trailing 12-month average spend for Vision Direct customers to approximately $110.

> Sales from repeat customers grew by 45% for the quarter, with revenue from repeat customers representing 73% of total sales. Net sales from repeat customers grew by 46% in OTC, by 21% in mail-order pharmacy, and by 14% in local pick-up pharmacy. In the

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795 10 0001 BSC.DOC:

- 8 -


CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

vision segment, 56% of sales were generated from repeat customers.

During the quarter, the Company added 306,000 new customers, bringing the total customer base to over 5.1 million unique customers since inception.

First quarter gross margin was 21.5%, up from 18.4%, and was benefited by high growth in OTC product sales and the addition of the vision segment.

As expected, marketing and sales expense per new customer for the first quarter was $20, up $3 from the fourth quarter of 2003, reflecting the assumption and integration of Vision Direct marketing efforts.

Fulfillment and order processing expenses declined as a percent of sales to 11.0 %, down from 12.5%.

Net loss on a GAAP basis for the first quarter was $4.6 million, or $0.06 per share, and improved by 19%, or $1.1 million.

EBITDA loss (as previously defined) was $961,000 for the first quarter of 2004.

The Company reduced its accrued liability associated with employee vacation by approximately $400,000 and realized a corresponding benefit to the first quarter's net loss and EBITDA loss, as a result of a new employee vacation policy implemented in the first quarter.

The Company capitalized labor of approximately $200,000 associated with technology integration of the Vision Direct Web store and back-end operations.

Employee headcount at the end of the quarter was approximately 600 employees.

Annualized inventory turns for the first quarter were approximately 17.

28.    Commenting on the quarter's results, defendant Raman stated:

The first quarter of 2004 was an exciting quarter for us, as we began to see a significant return from our growth initiatives. This was demonstrated by an impressive 46% year-over-year growth in revenue from repeat customers in our over-the-counter business, which shows that our customers are getting more from and are doing more of their shopping at the drugstore.com™ Web store...

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC

- 9 -

HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX (LLC)  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

29.     The April 28, 2004 release also provided guidance for the second quarter 2004 and the fiscal year 2004.

> For the second quarter of fiscal year 2004, drugstore.com, inc. expects net sales to be in the range of $85 million to $89 million. Of total net sales, the company expects OTC sales to be in the range of $36 million to $38 million, mail-order pharmacy sales to be in the range of $15 million to $16 million, local pick-up pharmacy to be in the range of $21 million to $22 million, and vision to be approximately $13 million. The company plans to implement a new Free 3-Day Shipping service for OTC orders of $49 or more, which is expected to benefit West Coast customers in particular, and also plans to increase spending on marketing to promote its newly acquired vision business and the Free 3-Day Shipping service. As a result, the company anticipates GAAP net loss for the second quarter to be in the range of $4.0 million to $4.5 million, and EBITDA loss to be in the range of $600,000 to $1.1 million.

> For the full fiscal year, drugstore.com, inc. confirmed its prior guidance that net sales are expected to grow more than 45% over 2003, to a range of $360 million to $390 million. The company adjusted its forecast of GAAP net loss for the full fiscal year slightly, to a range of $9.8 million to $13.8 million. The company maintained its prior EBITDA guidance for fiscal year 2004, with EBITDA in the range of break-even to a profit of $4.0 million, and believes that it will end the year with more than $40 million in cash. A reconciliation of forecasted net loss range to forecasted EBITDA range (net loss is the most directly comparable GAAP measure) is included in the financial data accompanying this press release.

30.     On May 17, 2004, Defendant Iyer sold 10,000 shares of his drugstore.com stock for proceeds of $44,080.

### VI.     THE TRUTH EMERGES

31.     On June 11, 2004, drugstore.com investors were surprised to learn that defendant Raman was suddenly resigning from his position as CEO of drugstore.com "to pursue other opportunities." In the same press release, the Company lowered its expected revenue for the second quarter and the fiscal year 2004. This was less than 45 days after drugstore.com had issued positive guidance in its release dated April 28, 2004.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC

- 10 -



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE   LOS ANGELES   PHOENIX [NLO]   SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

> For the second quarter of 2004, drugstore.com, inc. currently expects revenues to increase by approximately 50 percent year-over-year, in line with previous guidance of $85 to $89 million, with a GAAP net loss of approximately $4.5 million to $5.2 million. The company expects to report an EBITDA loss (a non-GAAP financial measure defined as earnings before interest, taxes, depreciation and amortization of intangible assets, non-cash marketing expense and stock-based compensation) of $1.1 to $1.8 million for the second quarter. This would represent a significant improvement over an EBITDA loss of $2.1 million reported for the same period last year, but is below previous guidance of an EBITDA loss of $600,000 to $1.1 million.

32. Commenting on this news, Defendant Barton, acting CEO of drugstore.com, remarked:

> We expect our second quarter results to be impacted by a dip in gross margins to approximately 20.3 percent[.] . . . This reflects a slower-than-anticipated ramp-up in our Vision Direct business and the impact of our free three-day shipping and other discount programs on our gross margins.

> For the full year, drugstore.com, inc. net sales are now expected to grow by more than 40 percent over 2003, to a range of $355 million to $370 million. For fiscal year 2004, the company adjusted its previous forecast of GAAP net loss to a range of $15.8 million to $17.8 million and adjusted its prior EBITDA guidance to an EBITDA loss in the range of $2.0 to $4.0 million.

33. Immediately following the Company's release, drugstore.com's stock plunged approximately 38% from its closing price of $4.91 on June 10, 2004, to a closing price of $3.06 on June 14, 2004, on volume of 3.8 million shares.

34. Whitaker Securities LLC senior analyst Marc Bettinger, who was surprised by the announcement, found "Mr. Raman's stepping down and timing of such disquieting." Explaining his downgrade of drugstore.com stock to "under perform" from "market perform," Bettinger stated:

> The Company's dramatic announcement that its 2004 sales would be lower EBITDA would swing $5 million (from midpoint to midpoint) to negative territory and that its CEO was resigning does little to inspire confidence in the story...

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC

- 11 -



HAGENS BERMAN LLP

CAMBRIDGE  LOS ANGELES  PHOENIX [SEAC]  SEATTLE
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

35.     The façade of growing strength in the Company's operations, which artificially

inflated the value of drugstore.com stock, occurred at the perfect time for Defendants to sell

millions of dollars worth of the Company's stock.

36.     The true facts which were known by each of the Defendants, but concealed from

the investing public during the Class Period were as follows:

    a.    drugstore.com's gross margins were being negatively
        impacted due to its implementation of a free 3-day shipping
        promotion;

    b.    the integration of Vision Direct was eroding the Company's
        margins;

    c.    the Company's sales growth was being negatively impacted
        by cancellations resulting from expired prescriptions;

    d.    drugstore.com was not on track to "break even". But rather
        to incur massive losses; and

    e.    as a result of the foregoing, Defendants lacked a reasonable
        basis for their positive statements about the Company and
        its earnings projections.

## VII.     SCIENTER

37.     As alleged herein, Defendants acted with scienter in that Defendants knew that

the public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their

receipt of information reflecting the true facts regarding drugstore.com, their control over, and/or

receipt and/or modification of drugstore.com's allegedly materially misleading statements and/or

their associations with the Company which made them privy to confidential proprietary

information concerning drugstore.com, participated in the fraudulent scheme alleged herein.



HAGENS BERMAN LLP

CAMBRIDGE   LOS ANGELES   PHOENIX [RLC]   SEATTLE
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    38.    Defendants were also motivated during the Class Period to inflate the Company's

2    financial performance in order to enable the Individual Defendants to sell their personally-held

3    drugstore.com common stock to the unsuspecting market, as detailed in the following chart.  The

4    significant amount of the sales, resulting in proceeds of more than $4.7 million, provide a strong

5    inference that the Defendants were aware of the materially adverse facts concerning the

6    Company and its business and intentionally failed to disclose such known facts to the public as

7    detailed herein.

| **Defendant** | **Shares Sold** | **Proceeds ($)** |
|---|---|---|
| Raman | 551,300 | 3,257,262 |
| Barton | 200,000 | 1,213,303 |
| Iyer | 50,000 | 306,080 |

11    39.    The Individual Defendants knew that the market would soon respond negatively

12    to drugstore.com's misleading projections.  Motivated by self-interest, they concealed the truth

13    about the Company's problems from the investing public and sold drugstore.com stock in

14    unusual volume.  The average price of each share sold by Defendants was almost double its

15    closing price the day after the truth was disclosed.

16    40.    The Individual Defendants engaged in this fraudulent scheme to artificially inflate

17    the price of drugstore.com securities in order to:  (i) protect and enhance their executive positions

18    as well as the substantial compensation and prestige they obtained thereby; (ii) enhance the value

19    of their personal holdings of drugstore.com stock; and (iii) reap enormous profits from the

20    exercise of their stock options and sale of their drugstore.com securities.

## VIII.    STATUTORY SAFE HARBOR

22    41.    The statutory safe harbor provision for forward-looking statements under certain

23    circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

24    Defendants are liable for the false forward-looking statements pled because at the time each was

25    made, the conveyor knew that the particular forward-looking statement was false, and/or that it

26

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795 10 0001 BSC DOC

- 13 -



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 Fifth Avenue, SUITE 2900 ● Seattle, WA 98101
TELEPHONE (206) 623-7292 ● FACSIMILE (206) 623-0594

was authorized and/or approved by an executive officer of drugstore.com who knew it was false when issued.

## IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

42.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

      a.    Defendants made public misrepresentations or failed to disclose facts during the Class Period;

      b.    The omissions and misrepresentations were material;

      c.    drugstore.com securities traded in an efficient market;

      d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

      e.    Plaintiffs and the other members of the Class purchased drugstore.com securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

43.    At all relevant times, the market for drugstore.com securities was an efficient market for the following reasons, among others:

      a.    drugstore.com common stock met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

      b.    As a regulated issuer, drugstore.com filed periodic public reports with the SEC and the Nasdaq;

      c.    drugstore.com regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

      d.    drugstore.com was followed by several securities analysts employed by major brokerage firms who wrote reports



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

which were distributed to the sales force and certain
customers of their respective brokerage firms.  Each of
these reports was publicly available and entered the public
marketplace.

44.    Since drugstore.com securities trade in an efficient market, it is unsurprising that
material news concerning the Company's business would immediately impact the market price
of its common stock, as evidenced by the rapid decline in share price in the aftermath of
drugstore.com's corrective disclosures.  Under these circumstances, all purchasers of the
Company's securities during the Class Period suffered similar injury due to the fact that the price
of drugstore.com stock was artificially inflated throughout the Class Period.  At the times Class
members purchased, or otherwise acquired, drugstore.com securities, they were without
knowledge of the facts concerning the wrongful conduct alleged herein, and could not have
reasonably discovered such facts.  As a result, the presumption of reliance applies.  Plaintiffs will
also rely, in part, upon the presumption of reliance established by material omission.

## X.    COUNT I

### VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

45.    Plaintiffs repeat and reallege each and every allegation contained above as if fully
set forth herein.  This claim is asserted against drugstore.com and the Individual Defendants.

46.    During the Class Period, Defendants carried out a plan, scheme and course of
conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing
public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and
maintain the market price of drugstore.com securities; (iii) enable Defendants to sell hundreds of
thousands of shares of inflated drugstore.com stock for millions of dollars; and (iv) cause
Plaintiffs and other members of the Class to purchase drugstore.com securities at these
artificially inflated prices.  Each Defendant took the actions set forth in this complaint to
perpetrate this unlawful scheme and deceitful course of conduct.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC

- 15 -

HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX [BLUE]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

47.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities by maintaining artificially high market prices for drugstore.com securities in violation of Section 10(b) of the Exchange Act and Rule 10(b)-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

48.     In addition to the duties of full disclosure imposed on Defendants as a result of their making affirmative statements and reports, or participating in the making of such statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with SEC disclosure provisions Regulation S-X (17 C.F.R. Sections 210.01 et seq.) and Regulation S-K (17 C.F.R. Sections 229.10 et seq.). These provisions require accurate and truthful information with respect to the Company's operations, financial condition, and earnings, so that the market price of the Company's securities would be based on truthful, complete, and accurate information.

49.     drugstore.com and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means, and/or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information concerning the Company's business, operations, and future prospects as specified herein.  While in possession of this materially adverse, non-public information, the Defendants employed devices, schemes, and artifices intended to defraud investors.  Through deceitful acts, practices, and a specific course of conduct, Defendants assured investors of drugstore.com's value, performance, and continued substantial growth.  This included the making of, or the participation in the making of, untrue statements of material facts, as well as omitting materially adverse facts necessary to make the issued statements not misleading.  Defendants also engaged

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795 10 0001 BSC.DOC

- 16 -



1  in transactions, practices, and a course of business which operated as a fraud and deceit upon the

2  purchasers of drugstore.com securities during the Class Period.

3         50.     The Individual Defendants' primary liability, and controlling person liability,

4  arises from the following facts: (i) the Individual Defendants were high-level executives and/or

5  directors at the Company during the Class Period; (ii) by virtue of their positions and

6  responsibilities with the Company, each of the Defendants were privy to, and participated in the

7  creation, development and reporting of the Company's internal budgets, plans, projections and/or

8  reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with

9  one another and were advised of, and had access to, other members of the Company's

10  management team, internal reports, and other data and information about the Company's

11  financial condition and performance at all relevant times; (v) and the Individual Defendants were

12  aware of the Company's dissemination of information to the investing public which they knew or

13  recklessly disregarded was materially false and misleading.

14         51.     Defendants had actual knowledge of the misrepresentations and omissions of

15  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

16  ascertain and to disclose such facts, even though such facts were readily available to them.  Such

17  material misrepresentations and/or omissions were done knowingly or recklessly, and for the

18  purpose and effect of concealing drugstore.com's operating condition and future business

19  prospects from the investing public while supporting the artificially inflated price of its

20  securities.  As demonstrated by Defendants' overstatements and misstatements of the Company's

21  business, operations, and earnings throughout the Class Period, Defendants, if they did not have

22  actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to

23  obtain such knowledge by deliberately refraining from taking those steps necessary to discover

24  whether those statements were false or misleading.

25         52.     As a result of the dissemination of the materially false and misleading

26  information, and the failure to disclose material facts, as set forth above, the market price of



1   drugstore.com securities was artificially inflated during the Class Period.  In ignorance of the fact

2   that market prices of drugstore.com publicly-traded securities were artificially inflated, and

3   relying directly or indirectly on the false and misleading statements made by Defendants, or

4   upon the integrity of the market in which the securities traded, and/or on the absence of material

5   adverse information that was known to or recklessly disregarded by Defendants but not disclosed

6   in public statements by Defendants during the Class Period, Plaintiffs and the other members of

7   the Class acquired drugstore.com securities during the Class Period at artificially high prices and

8   were damaged thereby.

9       53.     At the time of said misrepresentations and omissions, Plaintiffs and other

10  members of the Class were ignorant of the fraudulent statements, and believed them to be true.

11  Had Plaintiffs and the other members of the Class and the marketplace known of the true

12  financial condition and business prospects of drugstore.com, which were not disclosed by

13  Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise

14  acquired their drugstore.com securities, or, if they had acquired such securities during the Class

15  Period, they would not have done so at the artificially inflated prices which they paid.

16      54.     By virtue of the foregoing, Defendants have violated Section 10(B) of the

17  Exchange Act, and Rule 10b-5promulgated thereunder.

18      55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and

19  the other members of the Class suffered damages in connection with their respective purchases

20  and sales of the Company's securities during the Class Period.

21              ## XI.    CLAIM II

22          ## VIOLATION OF SECTION 20A OF THE EXCHANGE ACT

23      56.     Plaintiffs repeat and reallege each and every allegation contained above as if fully

24  set forth herein.  This claim is asserted against the Individual Defendants.

25      57.     The Individual Defendants acted as controlling persons of drugstore.com within

26  the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

CLASS ACTION COMPLAINT FOR                    - 18 -
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE  LOS ANGELES  PHOENIX [LLC]  SEATTLE
1301 Fifth Avenue, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  positions, ownership, contractual rights, participation in, and/or awareness of the Company's

2  operations and/or intimate knowledge of the statements filed by the Company with the SEC and

3  disseminated to the investing public, the Individual Defendants had the requisite power to

4  influence and control, and did influence and control, directly or indirectly, the decision-making

5  of the Company, including the content and dissemination of the various statements which

6  Plaintiffs contend are false and misleading. Prior to, and/or shortly after, the misleading

7  statements were issued, the Individual Defendants were provided with, or had unlimited access

8  to copies of the Company's reports, press releases, public filings and other statements alleged by

9  Plaintiffs to be misleading. As such, they had the ability to have these statements corrected,

10  and/or to prevent them from being issued altogether.

11     58.    In addition, the Individual Defendants had direct and supervisory involvement in

12  the day-to-day operations of the Company and, therefore, are presumed to have had the power to

13  control or influence the particular transactions giving rise to the securities violations as alleged

14  herein, and exercised the same.

15     59.    As set forth above, drugstore.com and the Individual Defendants each violated

16  Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint. By virtue

17  of their positions, each as a controlling person, the Individual Defendants are liable pursuant to

18  Section 20(a) of the Exchange Act. As a direct and proximate result of drugstore.com's and the

19  Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered

20  damages in connection with their purchases of the Company's securities during the Class Period.

21                    **XII.    PRAYER FOR RELIEF**

22     **WHEREFORE,** Plaintiffs pray for relief and judgment, as follows:

23     A.    Determining that this action is a proper class action pursuant to Rule 23 of the

24  Federal Rules of Civil Procedure;

25

26

CLASS ACTION COMPLAINT FOR                    - 19 -
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC



HAGENS BERMAN LLP
Attorneys at Law

CAMBRIDGE   LOS ANGELES   PHOENIX (ttle)   SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   B.   Awarding compensatory damages in favor of Plaintiffs and the other Class

2   members against all Defendants, jointly and severally, for all damages sustained as a result of

3   Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

4   C.   Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in

5   this action, including counsel fees and expert fees; and

6   D.   Awarding such other and further relief as the Court may deem just and proper.

7   ### JURY TRIAL DEMANDED

8   Plaintiffs hereby demand trial by jury.

9   Dated:  July 23, 2004

10   **HAGENS BERMAN LLP**

11

12   By _____
     Steve W. Berman, WSBA No. 12536

13   1301 Fifth Avenue, Suite 2900
     Seattle, WA  98101

14   Telephone:  (206) 623-7292
     Facsimile:  (206) 623-0594

15   **WOLF HALDENSTEIN ADLER**

16   **FREEMAN & HERZ, LLP**
     Fred Taylor Isquith, Esq. (FI6782)

17   270 Madison Avenue
     New York, New York 10016

18   Telephone: (212) 545-4600
     Facsimile: (212) 545-4653

19   ***Counsel for Plaintiffs***

20   **BRODSKY & SMITH, LLC**

21   Evan Smith, Esq.
     Two Bala Plaza, Suite 602

22   Bala Cynwyd, PA  19004
     Telephone: (610) 667-6200

23   Facsimile: (610) 667-9029

24   ***Counsel for plaintiff Jane Zebari***

25

26

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795-10-0001 BSC.DOC

- 20 -



CAMBRIDGE  LOS ANGELES  PHOENIX [PLUS]  SEATTLE
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
Telephone (206) 623-7292 • Facsimile (206) 623-0594

1

**LAW OFFICES OF BRIAN FELGOISE P.C.**
Brian Felgoise, Esq.
2       261 Old York Road- Suite 423
Jenkintown, PA 19046
3       Telephone: (215) 886-1900

4       **LAW OFFICES OF MARC HENZEL**
Marc Henzel, Esq.
5       273 Montgomery Ave., Suite 202
Bala Cynwyd, PA 19004
6       Telephone: (610) 660-8000
Facsimile: (610) 660-8080

7

8       *Counsel for plaintiff Daniel J. Anderson*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL SECURITIES
LAWS
Case No.
1795.10 0001 BSC.DOC



CAMBRIDGE  LOS ANGELES  PHOENIX [PLLC]  SEATTLE
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## PLAINTIFF'S CERTIFICATION

I, (Mr./Ms.) Jane Z Zebari, ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in DSC \\ securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary):

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|------|------|------|
| 2-19-04 | 1,000 DSC M | 0 | $6.35 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1 day of July, 2004

Sign Name:
Print Name:
Address:
State, Zip Code:
County:
Country (if not USA):